UNITED STAES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

RONALD SAMUELS

            PLAINTIFF,



MEMORANDUM OF LAW IN

SUPPORT OF PLAINTIFF

OPPOSED TO SUMMARY JUDGMENT

11-CV-6255F

V.

POLICE OFFICER DARREL SCHULT, POLICER OFFICER

ANTHONY DIPONZIO AND POLICER BERNIE GARICA

            DEFENDANTS,



Defendants provided a clear view from each individual narrative police report as well testified under oath individually. The manner of unconstitutional use of excessive force to such an extent against plaintiff. Allow i to place under scope police officer Anthony Diponzio solemn declaration.

To which plaintiff never attempt to attack him never swung at officer kick or spit on him or the other

Officer that have assisted the use of force. Officer Anthony Diponzio narrative police report the knee strikes he deliver to plaintiff were necessitated by plaintiff do to the fact plaintiff continued to fight with him and other officer that assisted with subdued of plaintiff. Officer Anthony Diponzio stated he was the only officer to tackled plaintiff by his self despite that fact after officer DARREL SCHULT and officer BERNIE GARICA assisted the knee skrikes the pressure to the neck the spraying oc chemical pepper spray deployed in plaintiff face already in handcuff. The report as well testimony from police officer Anthony Diponzio clearly display retaliation for plaintiff running away from police DARREL SCHULT later in time than he had his gun drawn and order plaintiff to the ground. Office ANTHONY DIPONZIO also said in report he himself had his gun pointed at plaintiff and plaintiff ran towards with his gun pointed at plaintiff. Allow the statement from officer ANTHONY DIPONZIO reflex he completed the use of force report despite that fact disregarded to draft Resisting arrest report C.P.L205.30 C.P.L 240.26(1) harassment or obstructing government property kicking officers patrol grill plaintiff was accused of.

## 1. STANDARD OF REVIEW

Fidelity & Deposit Co. v. UNITED STAES, summary judgment is unconstitutional the question is governed by the Seventh Amendment which provides that [i]n suits at common law,... the right of trial by Jury shall be preserved, and no fact tried by jury, shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."The supreme court has held that "common law" in the Seventh Amendment refer to the English common law in 1791.

1. Defendants, establish sufficient evidence within narrative police reports as well

   A solemn declaration from each officer plaintiff medical records sustain injuries.

Tracy v, Freshwater 623F.3d 90( 2d cir.20100

See Graham v. Connor 490 U.S 386, 395, 109 S. Ct. 1865, 104 L Ed 2d 443 (1989)

Park v. Shiflett 250 F.3d 843, 849 (4cir. 2001

See e.g. Henderson v. [*99] Munn 439 F.3d 497, 502-03 (8th cir 2006)

See e.g Breen v. Garrison 169 f.3d 152, 153 (2d cir 1990)

See Estelle v Gamble, 429 U.S 97 106, 97 S. Ct. 285, 50 L. ED. 2d 251 (1976)

### Conciusion

WHEREFORCE, it is respectfully requested to such an extent plaintiff motion

Opposed to summary judgment as well award docket date for trial together.

Dated September 8, 2016          PRO-SE RONALD SAMUELS

TO; Spencer L. Ash, Esq. of Counsel

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

RONALD SAMUELS

          Plaintiff,

                                  STATEMENT OF FACTS TO

                                  OPPOSED TO SUMMARY JUDGMENT

v.                                  11-CV-6255F

Police officer DARREL SCHULT, Police officer

ANTHONY DIPONZIO and Police BERNIE GARCIA

          Defendants,

I RONALD SAMUELS plaintiff duly admitted before the court of the State of New York, hereby makes the following statements under penalty of perjury .I submit this statement of motion to opposed objection and request to the court this motion of summary judgment should in the faith of the court be annulled. Defendants, may not be blind eyed of the letter of administration rules policy and regulations.

Exhibt: A Rochester Police Department General order 335 III. Procedures page (3) a) OC was used. 3) exposure to OC a) and b) such treatment will be rendered without delay and be noted.

Exhibt: B Anthony Diponzio narrative stated in the report Line (20) the suspect was handcuffed and walked to my patrol vehicle, where he kicked the grill of my patrol vehicle and was brought to the ground and subdued. SRR'S were completed regarding the incident. OFC Garcia took one photo of the suspect at 81 conkey ave. the suspect was transported to RGH to be treated for OC spray. See officer Anthony Diponzio clearly stated suspect was handcuff then was OC spray, then was transported back to the crime scene to be identified. Officers as well as Officer Anthony are clearly showing the mind frame to disregard administration procedures the Show –up was impermissibly suggestive there was no reason why a far less- suggestive lineup could not have been arranged at the police station.

Exhibt: C officer Anthony Diponzio solemn declaration page:456 states plaintiff did not sure any aggressive violent behavior towards him or in other officer Line: 6 through 17.

Let's review Exhibt: B Line 18 officer Anthony diponzio suspect and tackled him to the ground, and he continued to fight with myself, OFC garcia and OFC Schultz. Officer Anthony Diponzio Answer under oath page: 473 Line :4 through 21 . the plaintiff ran from first officer Darrel Schultz as officer had is gun pointed at plaintiff. Then plaintiff ran towards officer Anthony Diponzio who also had his gun pointed at plaintiff.

Exhibt: D officer Darrel Schultz narrative police report he stated plaintiff who was face down and executed a three (point landing .i scooped (s) right arm I yelled for (s) to resisting and put his hands behind his back two times. He also stated he applied pressure to (s) mandibular

Exhibt: E officer Darrel Schultz a solemn declaration page: 12 through 17.

EXhibt: F plaintiff complaint stated officers use excessive force knee strikes mandibular chock to the neck plaintiff stated he was slap in his head knee in the back handcuff and spray with OC place face down on a officer patrol vehicle hood and the hood was hot.

Exhbit: G officer BERNIA GARICA narrative police report

Exhibt:H plaintiff medical records . Monore County medical records 2008, medical records from the State of New York Correction 2010 to 2015 , medical records State of New Jersey .

# Exhitbit

# A

C.   All force used, with the exception of mere handcuffing, blanketing, escorting, or application of hobble or spit sock, will require a Subject Resistance Report, RPD 1377, (SRR-Attachment A).

D.   Only those members that have successfully completed an approved RPD Taser course will be authorized to deploy the Taser. Each member will complete biennial re-certification training with the Taser, and the Taser will be used in accordance with this training.

E.   Only those members that have successfully completed an approved Pepperball Launching System (PLS) annual training course will be authorized to deploy the PLS. Each member will complete annual training with the PLS, and the PLS will be used in accordance with this training.

F.   Use of restraining devices is mandatory on all prisoners unless in the member's judgment unusual circumstances exist which make the use of restraining devices impossible or unnecessary (e.g. prisoner is very elderly, handicapped, etc.).

## III.   PROCEDURES

A.   Any member using force pursuant to their duties, or any off-duty member using force regardless of whether or not it is pursuant to their duty as a police officer will:

1.   Immediately notify their immediate supervisor of the incident.

a)   If the supervisor is not on duty (e.g., Technicians on the 1st or 3rd platoon), the supervisor in the Section of occurrence will be notified.

b)   In the case of off-duty incidents, the member will immediately notify the supervisor in the area of occurrence, or if outside the City, the Commander of the Patrol Division, or Staff Duty Officer, and the police agency of jurisdiction. (Incidents that stem from additional employment will follow guidelines in GO 245.).

c)   In cases of a non-arrest or unarrest incident where force has been used, the member will obtain

permission from a supervisor prior to the release or the subject. An Incident Report describing the incident must be completed.

NOTE: If a non-sworn employee of the City aids a sworn member in a subject resistance, a supporting deposition and any other applicable reports will be taken from said employee. The non-sworn employee will not complete an SRR. Members, however, must list them as a witness on their SRR.

2. After force is used, immediately evaluate the need for medical attention or treatment for that person upon whom the techniques were used and arrange for such treatment when:

      a) That subject has a visible injury requiring medical attention, including injuries prior to the use of force;

      b) Subject complains of injury or requests for medical attention;

      c) OC, PLS or the Taser was used.

Note: ALL subjects who are exposed to a Taser application need to be transported to a hospital to be seen by a medical professional for treatment.

3. Exposure to OC or PLS

      a) Persons exposed to OC or PLS will be taken to the Eyewash Facility located in the Public Safety Building (PSB) garage before being released or brought to booking.

      b) Persons will not be brought to the Eyewash Facility if they continue to be combative, display excessive hyperactive behavior after OC or PLS has been administered, exhibit any other signs of physical distress (e.g., difficulty breathing, chest pain, and/or other physical complaints) or have other physical injuries or complaints of injuries needing physical attention. Such treatment will be rendered without delay and will be noted on the SRR.

# Exhitbit

# B



3    Q.    So based on that description you assisted Officer

4    Schultz in chasing down the black male who ultimately was

5    Mr. Samuels, correct?

6         A.    That would be correct.

7         Q.    And he ran away from you, right?

8         A.    Correct.

9         Q.    So he was trying to get away, correct?

10        A.    Correct.

11        Q.    He didn't throw anything at you?

12        A.    Did not throw anything at me.

13        Q.    He didn't attempt to attack you?

14        A.    Not when he took off running, no.

15        Q.    And he didn't yell any obscenities at you or curse

16   you in any way?

17        A.    Not to my recollection, no.

18        Q.    So as he is running you said earlier you kind of

19   described how there were times he would run past you and

20   run, try to get up the fence and then run past you again,

21   correct?

22        A.    Correct.

23        Q.    And during all those times he never swung at you or

24   kicked you, correct?

25        A.    No, correct, he did not.

# Exhitbit

# D

| 5. SEX | E. SEX | 7. RACE | 8. HEIGHT | 9. WEIGHT | 10. DOB/LOS | 16. INCIDENT LOCATION | | PSA |
|---|---|---|---|---|---|---|---|---|
| | | | | | | 81 CONKEY AVE | 23 | |

**RPD**

**11. ARREST?** NO - release approved by: ASSAULT 2ND
☒ YES - charges: ASSAULT 2ND

## 12. SUBJECT ACTIONS

Subject resisted by (Check all that apply and explain in narrative.)

## 13. TACTIC EFFECTIVENESS

Check the appropriate box indicating whether the tactic was used. If the tactic was used write the number (1,2,3 ... ) indicating what order the tactics were used in column one (1). In column two (2) write E, for Effective, ME, for Moderately Effective and NE, for Not Effective.

| 12. SUBJECT ACTIONS | | ORDER | EFFECTIVE | | ORDER | EFFECTIVE |
|---|---|---|---|---|---|---|
| ☒ Verbal Resistance (failing to adhere to verbal commands) | ☒ Verbal | 2 | NE | ☐ Forward Spin | | |
| | ☒ Mandibular Angle | 3,4 | E | ☐ Shin Sheer | | |
| | ☐ Hypoglossal Nerve | | | ☐ Arm Lock | | |
| | ☐ Jugular Notch | | | ☐ Front Jab w/ Baton | | |
| ☒ Passive Resistance (dead weight) | ☐ Clavical Notch | | | ☐ Rear Jab w/ Baton | | |
| | ☐ Brachial Stun | | | ☐ Flat Chop | | |
| | ☐ Suprascapular Stun | | | ☐ Upper Chop | | |
| | ☐ Jab | | | ☐ Forward Spin | | |
| ☒ Active Resistance (pulling away, striking or attempt assault) | ☐ Front Kick | | | ☐ Reverse Spin | | |
| | ☐ Straight Punch | | | ☐ Inside Spin | | |
| | ☐ Angle Kick | | | ☐ Power Spin | | |
| | ☐ Forearm Strike | | | ☐ OC | | |
| | ☐ Knee Strike | | | ☐ Taser | | |
| ☐ Armed Resistance (uses or attempts to use a weapon or dangerous instrument) | ☐ Defensive Wedge | | | ☐ Bean Bag | | |
| | ☐ Hooking Technique | | | ☐ Hand Gun | | |
| | ☒ Ground Stabilization. (ie. 3-Point Landing, joint manipulation) | 1 | E | ☐ Long Gun | | |
| | | | | ☐ Other: | | |
| | | | | ☐ Other: | | |

**14. Narrative** (If officer is in plainclothes, describe own clothing. If tactic(s) used on subject were ineffective, explain reason(s) why.):

I STEPPED OUT WITH (S) WHO MATCHED THE DESCRIPTION OF AN ASSAULT SUSPECT FROM 671 ST. PAUL BLVD. (S) TOOK OFF RUNNING BEHIND 81 CONKEY AVE. I LOST SIGHT OF (S) FOR A COUPLE SECONDS. OFFICER DIPONZIO CAUGHT UP TO (S) ON THE NORTH SIDE OF 81 CONKEY AVE. I SAW OFFICER DIPONSIO AND (S) ON THE GROUND. (S) WAS FLAILING HIS ARMS AND TRYING TO GET AWAY FROM OFFICER DIPONZIO. I RAN UP TO THE RIGHT SIDE OF (S) WHO WAS FACE DOWN AND EXECUTED A THREE POINT LANDING. I SCOOPED (S) RIGHT ARM. I YELLED FOR (S) TO STOP RESISTING AND PUT HIS HANDS BEHIND HIS BACK TWO TIMES. (S) DID NOT COMPLY. I HELD ONTO (S) RIGHT WRIST WITH MY LEFT HAND AND APPLIED PRESSURE TO (S) MANDIBULAR ANGLE(RIGHT SIDE) WITH MY RIGHT THUMB. THE FIRST TIME (S) DID NOT PUT HIS LEFT HAND BEHIND HIS BACK. I APPLIED PRESSURE AGAIN TO HIS MANDIULAR ANGLE WHILE VERBALIZING FOR (S) TO PUT HIS HANDS BEHIND HIS BACK. (S) DID PUT HIS HANDS BEHIND HIS BACK AND I PLACED MY HANDCUFFS ON HIM.

**rochester police department**

**OFFICER:** ☐ Primary Officer ☒ Assisting Officer **Name** SCHULTZ **ID#** 1082

Rev 02/08

# Exhitbit

# E

2          total and complete answer. Page and line, please?

3               MS. CIANCA:  Okay.  Back to starting on line 7

4          then.

5   BY MS. CIANCA:

6     Q.   Question:  There was some force that needed to be

7   used in order to take Mr. Samuels into custody?

8               Answer:  That's correct.

9               Question:  Could you describe what the force

10   consisted of?

11               Answer:  My part in the use of force is as I ran up

12   he was struggling on the ground with Officer DiPonzio.  I

13   came up on the right side of the defendant grabbing by his

14   head and used what's called a mandibular angle pressure.

15   It's located right underneath his ear and along the jaw and

16   press on that a couple times to get him to stop flailing and

17   stop resisting and it was effective.

18               Do you recall being asked those questions and giving

19   those answers?

20     A.   Yes, I do.

21     Q.   So with regard to your testimony at that time, you

22   did not mention anything about rolling around or struggling,

23   manipulating Officer DiPonzio?

24     A.   Not specifically rolling around, I didn't use those

25   words, no.

# Exhitbit

# F

FIRST CLAIM: ON (DATE OF THE INCIDENT) MAY 02, 2008

DEFENDANT (GIVE THE NAME AND POSITION HELD OF EACH DEFENDANT INVOLVED IN THE INCIDENT) THEY

OFFICER DARLEY SCHULTZ ROCHESTER P.d.

OFFICER ANTHONY DIPONZIO ROCHESTER P.d.

OFFICER BERUIC GARCIA ROCHESTER P.d.

DID THE FOLLOWING TO ME (BRIEFLY STATE WHAT EACH DEFENDANT NAME ABOVE DID). A ACT OF BATTERING, EXCESSIVE FORCE. I WAS EXISTING OUT A CORNER- E OFFICER SCHULTZ DROVE HIS POLICE VEHICLE INFRONT OF STORE EXIST. IF HE WAS TRYING TO HIT ME OR FIGHTED ME AS I EXIST OUT STORE OFFICER EXIST OUT VECHILE TOLD ME TO DROP THE PACK OF CIGARETTE ON THE MILD AND FOR ME TO GET ON THE GROUND. HE PULL HIS GUNS I PLAY.

I DIDN'T HAVE NO OBJECTS JUST A PACK NEWPORT CIGARETTS. I DIDN'T APPEAR TO BE A THREAT OR THREATED OFFICER SULTZ IT WAS NO NEED TO PULL OUT A GUNS I SAW A FEW MINUTES. I WAS CKLED TO THE GROUND BY OFFICER DIPONZIO AND HANDCUFF BEHIND MY BACK. ICER DIPONZIO WAS LAYING ON ME WITH HIS KNEE IN MY BACK WHILE I WAS HAND- EE TWO OFFICER RAN OVER TO US; OFFICER SCHULTZ GRAB THE BACK OF MY NECK I STARTED CHOKING HE BASH MY HEAD ON THE GRASS A COUPE OF TIMES THEN ICER SULTZ SLAP ME IN THE BACK OF MY HEAD HARD. I HEARD HIM SAID TO ME I M.F. YOU WANT TO RUN, THE OTHER OFFICER THAT RAN OVER TO ME WITH ICER SCHULTZ WAS OFFICER GARCIA HE STACKED KNEE ME IN ON MY HIP AND LOWER BACK. I TRY TO TURN AROUND ON MY BACK, I COULDN'T BECAUSE OFFICER SULTZ WAS CHOKING YELLING AT ME STOP MOVING I TOLD HIM I CAN BREATH I END ATH. I FEIT OFFICER SPEADING MY LG THEN OFFICER DIPONZIO STARTED KNEE MY THIGH A FEW TIMES ALL I CAN HEAR WAS YOU LIKE TO RUN; LAY DOWN AY DOWN MY THIGH WAS IN EXTREMELY PAIL I WAS SPRAY I DON'T KNOW WITH RAY ME WITH MACE.

CONTINUE ON OTHER PAGE

I WAS PICK UP OFF THE Ground I couldn't ecause my THIGH my whole legs was STIFF And I was FEEL pain in k. THE officer Thought I was being funny I told THEM I couldn't see with. I was place Bend on a car Hood face down and chest THE was Hot so it was Burning my face and chest I try to use my to help me push off THE Hood I was slam to THE Ground I felt p AT THE Back of my Head. I Heard a officer said to me what is problem I said Here in pain. said we have a Parking lot spray mace because I refuse to lay my face on the car Hood I started king. I was Pick up up a place in a police car I told to wait until a hospital to wash the mace off.

R. Samuels.
09-B-0297
4-17-2011
C of File

# Exhitbit

# G

**SUBJECT**

**RPD 1377**

**subject resistance report**

**rochester police department**

| 1. NAME LAST SAMUELS | FIRST ROBERT | MIDDLE | 2. DATE 05/02/08 | 3. TIME 1208 | 4. CR# 08-137640 | |
|---|---|---|---|---|---|---|

| 5. DOB 03/03/75 | 6. SEX M | 7 RACE B | 8. HEIGHT 6' 2" | 9. WEIGHT 190 | 10. INCIDENT LOCATION 81 CONKEY AVE. | PSA 23 |
|---|---|---|---|---|---|---|

11 ARREST?  ☐ NO - release approved by: _____
☒ YES - charges: _____

## 12. SUBJECT ACTIONS

Subject resisted by (Check all that apply and explain in narrative.)

☒ **Verbal Resistance** (failing to adhere to verbal commands)

☐ **Passive Resistance** (dead weight)

☒ **Active Resistance** (pulling away, striking or attempt assault)

☐ **Armed Resistance** (threat or attempts to use a weapon or dangerous instrument)

## 13. TACTIC EFFECTIVENESS

Check the appropriate box indicating whether the tactic was used. If the tactic was used write the number (1,2,3 ...) indicating what order the tactics were used in column one (1), in column two (2) write E. for Effective, ME. for Moderately Effective and NE. for Not Effective.

| Tactic | ORDER | EFFECTIVE | Tactic | ORDER | EFFECTIVE |
|---|---|---|---|---|---|
| ☒ Verbal | 1 | NE | ☐ Forward Spin | | |
| ☐ Mandibular Angle | | | ☐ Shin Sheer | | |
| ☐ Hypoglossal Nerve | | | ☐ Arm Lock | | |
| ☐ Jugular Notch | | | ☐ Front Jab w/ Baton | | |
| ☐ Clavical Notch | | | ☐ Rear Jab w/ Baton | | |
| ☐ Brachial Stun | | | ☐ Flat Chop | | |
| ☐ Suprascapular Stun | | | ☐ Upper Chop | | |
| ☐ Jab | | | ☐ Forward Spin | | |
| ☐ Front Kick | | | ☐ Reverse Spin | | |
| ☐ Straight Punch | | | ☐ Inside Spin | | |
| ☐ Angle Kick | | | ☐ Power Spin | | |
| ☐ Forearm Strike | | | ☐ OC | | |
| ☐ Knee Strike | | | ☐ Taser | | |
| ☐ Defensive Wedge | | | ☐ Bean Bag | | |
| ☐ Hooking Technique | | | ☐ Hand Gun | | |
| ☒ Ground Stabilization (ie. 3-Point Landing, joint manipulation) | 2 | E | ☐ Long Gun | | |
| | | | ☐ Other: _____ | | |
| | | | ☐ Other: _____ | | |

**14. Narrative** (If officer is in plainclothes, describe own clothing. If tactic(s) used on subject were ineffective, explain reason(s) why.):

I WAS ASSISTING MY LATERAL WITH AN APPREHENSION OF AN ASSAULT 2ND SUSPECT (STABBING AT 691 ST PAUL ST). I GAVE SUSPECT NUMEROUS VERBAL COMMANDS BY STATING OUT LOUD PUT YOUR HANDS BEHIND YOUR BACK. STOP RESISTING. I WAS GIVING THE VERBAL COMMANDS THROUGHT OUT THE ENTIRE INCIDENT WHILE SUSPECT WAS ON THE GROUND TRYING TO GET UP. WHILE SUSPECT WAS ON THE GROUND, I CONTINUED VERBALIZING ORDERS TO STOP RESISTING AND SCOOPED HIS LEFT ARM FROM IN FRONT OF HIS BODY AND PLACED IT BEHIND HIS BACK. I HELD ONTO SUSPECTS ARM UNTIL SUSPECT WAS HANDCUFFED BY OFFICER SCHULTZ. I THEN ASSISTED SUSPECT TO HIS FEET AND ESCORTED HIM BACK TOWARDS MY PATROL VEHICLE. I WAS ON AN ESCORT POSITION ON SUSPECT'S RIGHT SIDE AND AS WE WERE APPROACHING THE FRONT OF MY PATROL VEHICLE, SUSPECT KICKED THE GRILL OF IT. SUSPECT WAS THEN PLACED ON THE GROUND AND I AGAIN IN A LOUD VOICE VERBALIZED TO SUSPECT TO STOP FIGHTING AND NOT KICK MY PATROL VEHICLE. SUSPECT DISREGARDED MY VERBAL COMMANDS AND CONTINUED TO TWIST AND TURN ON THE GROUND. THEN AN OFFICER USED CAP-STUN AND SUSPECT STOP HIS ACTIONS. I THEN ASSISTED SUSPECT BACK TO HIS FEET AND CLEARED HIS FACE WITH WATER AFTER HE ASKED ME TO HELP HIM.

I ALSO TRANSPORTED SUSPECT TO RGH FOR EYE WASH AND TOOK PHOTOS AT THE SCENE.

RE-WRITE. 8/18/08 1230-mps

| OFFICER: | ☐ Primary Officer | ☒ Assisting Officer | Name B. GARCIA | ID# 788 |
|---|---|---|---|---|

Rev 12-98

# Exhitbit

# H

Interpreted for Multi-Diagnostic Services, Inc. by Joseph L. Racanelli, MD

SING-SING
DIN# 09B0297

RE: SAMUELS, Ronald
DOB: 03/03/1975
DATE OF EXAM: 11/09/2012

MRI OF THE LUMBAR SPINE:

T1 and T2 sagittal and axial images were obtained of the lumbar spine.

L1-L2: There is moderate disc bulging present. There is bilateral facet arthrosis.

L2-L3: There is a large disc protrusion, which is central and slightly paracentral to the left. There is impact on the thecal sac causing moderate spinal stenosis.

L3-L4: There is a large disc protrusion central and paracentral to the left. There is impingement of the thecal sac. There is moderate-to-severe spinal stenosis.

L4-L5: There is moderate disc bulging present. There is bilateral facet arthrosis.

L5-S1: There is disc space narrowing. There is retrolisthesis. There is a large central disc protrusion, which is slightly paracentral to the left.

There is no fracture or metastatic disease. The paraspinal soft tissues are normal.

IMPRESSION:
1. Mild central canal stenosis at L2-L3.
2. Large disc protrusion on the left at L3-L4 causing spinal stenosis.
3. Large central protrusion at L5-S1.

Joseph L. Racanelli, M.D.

Samuels, Ronald    09B0297    12/31/2012 11:58

| EMG Summary Table | Spontaneous | | | | MUAP | | | Recruitment Frequency |
|---|---|---|---|---|---|---|---|---|
| | IA | Fib | PSW | Fasc | Amp | Dur. | Poly | |
| L. TIB ANTERIOR | N | None | None | None | N | N | N | N |
| L. GASTROCN (MED) | N | None | None | None | N | N | N | N |
| L. PERON LONGUS | N | None | None | None | N | N | N | N |
| L. VAST MEDIALIS | N | None | None | None | N | N | N | N |
| L. TIB POSTERIOR | N | None | None | None | N | N | N | N |
| L. GLUTEUS MAX | N | None | None | None | N | N | N | N |
| L. L4 PSP | N | None | None | None | N | N | N | N |
| L. L5 PSP | N | None | None | None | N | N | N | N |
| L. S1 PSP | N | None | None | None | N | N | N | N |

**NCS Interpretation:** Left Sural SNAP revealed a normal latency and amplitude. Left Superficial Peroneal SNAP showed a normal latency and amplitude.

Left Peroneal CMAPs showed normal latencies and amplitudes. Conduction velocity was normal in the leg. Left Tibial CMAPs showed normal latencies and amplitudes. Conduction velocity was normal in the leg.

Left Peroneal and Tibial F-waves showed minimum latencies within normal limits.

Bilateral Tibial H-reflexes showed no significant side to side latency difference.

**EMG Interpretation:** Needle examination was performed with a monopolar electrode. The left lower extremity and corresponding paraspinal muscles were examined as noted above. Normal insertional activity and no abnormal spontaneous activity was seen. MUP's demonstrated normal size, configuration, duration and recruitment.

**Conclusion:**

Normal study. No electrodiagnostic evidence of left L2-S1 radiculopathy. No electrodiagnostic evidence of left lower extremity neuropathy.

**Recs:** Trial of epidural steroid injection through pain clinic. Follow up in Physiatry in 6-8 weeks.

Steven C. Weinstein, MD
Diplomate, American Board of Physical Medicine and Rehabilitation
Diplomate, American Board of Electrodiagnostic Medicine

2



STATE OF NEW YORK
DEPARTMENT OF CORRECTIONAL SERVICES ------ -

SSCF
FACILITY

X-RAY REQUISITION AND REPORT

NAME _Samuels Ronald_     DIN _0980297_

DATE ORDERED _6-28-13_   HOUSING UNIT _A059_   WORK LOC. ____

DATE DONE _7/10/13_   DATE OF BIRTH OR AGE _3/3/75_

TECHNICIAN ____   URGENT ____   ROUTINE ____

PRECAUTIONS/ALLERGIES/RISKS _NKDA_

EXAMINATION _Bilateral Hip    AP, Frog lateral_

CLINICAL DIAGNOSIS/HISTORY _(L) hip pain_

ORDERED BY DR. _P. Bigaud RPAC_

Bil. Hips 2 views.

There is mod degen. changes with narrowing of joint spaces.
SI joints appear normal.

Imp: Mod. Bil. OA.

Philip K Philip MD.

REVIEWED BY (INIT.) _FB_ / _7-26-13_ DATE

☑ NO ACTION IS REQUIRED AT THIS TIME

☐ REPORT TO SICK CALL

☐ FOLLOW UP WILL BE ARRANGED WITH A PRIMARY PROVIDER

☐ FOLLOW UP WILL BE ARRANGED WITH A SPECIALIST

☐ NOTIFICATION FORM COMPLETED AND DISTRIBUTED

RADIOLOGIST _____   DATE ____

DISTRIBUTION: Original -Health Record   Copy -Radiologist   Copy -X-Ray Folder

FORM 3108 (REV. 10/99)

# Electrodiagnostic Consultation Report

## Steven C. Weinstein, MD
## Physical Medicine and Rehabilitation

| | | | |
|---|---|---|---|
| Patient: | Samuels, Ronald | Age: | 37 Years 9 Months |
| Patient ID: | 09B0297 | Facility: | Greenhaven CF |
| Sex: | Male | Date of Study: | 12-31-12 |
| Date of Birth: 3/3/1975 | | | |

HPI: 37 y.o. man referred for evaluation of the left lower extremity He has had back pain since 2009. He has pain and numbness into the left lower extremity. He has undergone MRI of the lumbar spine that showed a large left HNP at L3/4 and L5/S1.

PE reveals MSR's are 2+ at the knees and ankles. Strength is decreased for the left ankle plantar flexors. Sensation is intact in the bilateral lower extremities. Left SLR is positive.

## Sensory NCS

| Nerve / Sites | Onset ms | PeakAmp µV | Dist cm | Vel m/s |
|---|---|---|---|---|
| L SURAL - Lat Mall | | | | |
| Calf | 3.10 | 6.0 | 14 | 45.2 |
| L SUP PERONEAL | | | | |
| Lat Leg | 3.35 | 5.7 | | |

## Motor NCS

| Nerve / Sites | Lat ms | Amp mV | Amp % | Segments | Dist cm | Vel m/s |
|---|---|---|---|---|---|---|
| L COMM PERONEAL - EDB | | | | | | |
| Ankle | 3.20 | 8.6 | 100 | Ankle - EDB | | |
| Knee | 13.95 | 6.7 | 77.8 | Knee - Ankle | 50 | 46.5 |
| L TIBIAL (KNEE) - AH | | | | | | |
| Ankle | 3.90 | 13.8 | 100 | Ankle - AH | | |
| Knee | 13.60 | 9.5 | 69.2 | Knee - Ankle | 47 | 48.5 |

## F Wave

| Nerve | F Lat ms |
|---|---|
| L COMM PERONEAL | |
| L TIBIAL (KNEE) | 51.25 |

## H Reflex

| Nerve | H Lat ms | H Amp pp mV |
|---|---|---|
| L TIBIAL (KNEE) | 33.20 | 8.8 |
| R TIBIAL (KNEE) | 33.50 | 5.6 |

AVM

# Multi-Diagnostic Services, Inc.

139-16 91ˢᵗ Avenue, Jamaica, NY 11435 ~Telephone (718) 454-8556
Fax (718) 454-7950 ~ Email: multidiag1@aol.com

Interpreted for Multi-Diagnostic Services, Inc. by Joseph L. Racanelli, MD

SING-SING
DIN# 09B0297

RE: SAMUELS, Ronald
DOB: 03/03/1975
DATE OF EXAM: 11/09/2012

MRI OF THE LUMBAR SPINE:

T1 and T2 sagittal and axial images were obtained of the lumbar spine.

L1-L2: There is moderate disc bulging present. There is bilateral facet arthrosis.

L2-L3: There is a large disc protrusion, which is central and slightly paracentral to the left. There is impact on the thecal sac causing moderate spinal stenosis.

L3-L4: There is a large disc protrusion central and paracentral to the left. There is impingement of the thecal sac. There is moderate-to-severe spinal stenosis.

L4-L5: There is moderate disc bulging present. There is bilateral facet arthrosis.

L5-S1: There is disc space narrowing. There is retrolisthesis. There is a large central disc protrusion, which is slightly paracentral to the left.

There is no fracture or metastatic disease. The paraspinal soft tissues are normal.

IMPRESSION:
1. Mild central canal stenosis at L2-L3.
2. Large disc protrusion on the left at L3-L4 causing spinal stenosis.
3. Large central protrusion at L5-S1.

TP 11/16/12

Joseph L. Racanelli, M.D.

MOBILE AND ON-SITE DIAGNOSTIC SERVICES

| EMG Summary Table | Spontaneous | | | | MUAP | | | Recruitment |
|---|---|---|---|---|---|---|---|---|
| | IA | Fib | PSW | Fasc | Amp | Dur. | Poly | Frequency |
| L. TIB ANTERIOR | N | None | None | None | N | N | N | N |
| L. GASTROCN (MED) | N | None | None | None | N | N | N | N |
| L. PERON LONGUS | N | None | None | None | N | N | N | N |
| L. VAST MEDIALIS | N | None | None | None | N | N | N | N |
| L. TIB POSTERIOR | N | None | None | None | N | N | N | N |
| L. GLUTEUS MAX | N | None | None | None | N | N | N | N |
| L. L4 PSP | N | None | None | None | N | N | N | N |
| L. L5 PSP | N | None | None | None | N | N | N | N |
| L. S1 PSP | N | None | None | None | N | N | N | N |

**NCS Interpretation:** Left Sural SNAP revealed a normal latency and amplitude. Left Superficial Peroneal SNAP showed a normal latency and amplitude.

Left Peroneal CMAPs showed normal latencies and amplitudes. Conduction velocity was normal in the leg. Left Tibial CMAPs showed normal latencies and amplitudes. Conduction velocity was normal in the leg.

Left Peroneal and Tibial F-waves showed minimum latencies within normal limits.

Bilateral Tibial H-reflexes showed no significant side to side latency difference.

**EMG Interpretation:** Needle examination was performed with a monopolar electrode. The left lower extremity and corresponding paraspinal muscles were examined as noted above. Normal insertional activity and no abnormal spontaneous activity was seen. MUP's demonstrated normal size, configuration, duration and recruitment.

**Conclusion:**

Normal study. No electrodiagnostic evidence of left L2-S1 radiculopathy. No electrodiagnostic evidence of left lower extremity neuropathy.

**Recs:** Trial of epidural steroid injection through pain clinic. Follow up in Physiatry in 6-8 weeks.

Steven C. Weinstein, MD
Diplomate, American Board of Physical Medicine and Rehabilitation
Diplomate, American Board of Electrodiagnostic Medicine

3

REVIEWED BY (INIT.) _FB_ / 7-26-13 DATE

☑ NO ACTION IS REQUIRED AT THIS TIME

☐ REPORT TO DR. ON CALL

☐ FOLLOW UP WILL BE ARRANGED WITH A PRIMARY PROVIDER

☐ FOLLOW UP WILL BE ARRANGED WITH A SPECIALIST

☐ NOTIFICATION FORM COMPLETED AND DISTRIBUTED

_____
RADIOLOGIST

) -14 +3
_____
DATE

DISTRIBUTION: Original -Health Record   Copy -Radiologist   Copy -X-Ray Folder

FORM 3108 (REV. 10/85)

## Electrodiagnostic Consultation Report

### Steven C. Weinstein, MD
### Physical Medicine and Rehabilitation

| | | | |
|---|---|---|---|
| **Patient:** | Samuels, Ronald | **Age:** | 37 Years 9 Months |
| **Patient ID:** | 09B0297 | **Facility:** | Greenhaven CF |
| **Sex:** | Male | **Date of Study:** | 12-31-12 |
| **Date of Birth:** | 3/3/1975 | | |

**HPI:** 37 y.o. man referred for evaluation of the left lower extremity He has had back pain since 2009. He has pain and numbness into the left lower extremity. He has undergone MRI of the lumbar spine that showed a large left HNP at L3/4 and L5/S1.

PE reveals MSR's are 2+ at the knees and ankles. Strength is decreased for the left ankle plantar flexors. Sensation is intact in the bilateral lower extremities. Left SLR is positive.

### Sensory NCS

| Nerve / Sites | Onset ms | PeakAmp µV | Dist cm | Vel m/s |
|---|---|---|---|---|
| L SURAL - Lat Mall | | | | |
| Calf | 3.10 | 6.0 | 14 | 45.2 |
| L SUP PERONEAL | | | | |
| Lat Leg | 3.35 | 5.7 | | |

### Motor NCS

| Nerve / Sites | Lat ms | Amp mV | Amp % | Segments | Dist cm | Vel m/s |
|---|---|---|---|---|---|---|
| L COMM PERONEAL - EDB | | | | | | |
| Ankle | 3.20 | 8.6 | 100 | Ankle - EDB | | |
| Knee | 13.95 | 6.7 | 77.8 | Knee - Ankle | 50 | 46.5 |
| L TIBIAL (KNEE) - AH | | | | | | |
| Ankle | 3.90 | 13.8 | 100 | Ankle - AH | | |
| Knee | 13.60 | 9.5 | 69.2 | Knee - Ankle | 47 | 48.5 |

### F Wave

| Nerve | F Lat ms |
|---|---|
| L COMM PERONEAL | |
| L TIBIAL (KNEE) | 51.25 |

### H Reflex

| Nerve | H Lat ms | H Amp pp mV |
|---|---|---|
| L TIBIAL (KNEE) | 33.20 | 8.8 |
| R TIBIAL (KNEE) | 33.50 | 5.6 |

# New Jersey Imaging Network
## Hackensack

NJIN HACKENSACK
365 PROSPECT AVENUE FIRST FLOOR
HACKENSACK, N.J 07601
Phone: 201-488-4808
Fax: 201-488-9558

Exam requested by:
MONA ABOULNAJA APN
10 FIRST STREET
HACKENSACK, NJ 07601

Patient: SAMUELS, II, RONALD
Date of Birth: 03-03-1975
Phone: (201) 362-0362
MRN: 1664944R Acc: 1003886096
Date of Exam: 08-17-2016

## EXAM: X-RAY LUMBAR SPINE TWO OR THREE VIEWS

HISTORY: Generalized chronic back pain.

TECHNIQUE: Three views of the lumbar spine.

COMPARISON: 9/22/2015.

FINDINGS: The vertebral bodies are normal in height and density. No fractures seen. Mild to moderate degenerative changes is noted with small osteophytes in all the vertebrae. There is some significant disc space narrowing between L5 and S1 vertebrae. No spondylolisthesis is seen. The SI joints are normal.

IMPRESSION: Mild to moderate generalized degenerative changes.

Thank you for the opportunity to participate in the care of this patient.

Mira Chakravarty MD - Electronically Signed: 08-17-2016 12:01 PM

## Confidential

### Convenient NJIN Locations

| Cedar Knolls | Clifton | Cranford | Edison | Englewood Cliffs |
|---|---|---|---|---|
| (973) 695 - 1250 | (973) 778 - 9600 | (908) 709 - 1323 | (732) 494 - 9061 | (201) 541 - 5401 |
| Hackensack | Randolph | Rutherford | Union City | Menlo Park |
| (201) 488 - 4808 | (973) 989 - 8400 | (201) 933 - 5856 | (201) 861 - 6100 | (732) 476-6133 |

# Exhitbit

# J

UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

------------------------------------------

Ronald Samuels
      Plaintiff,

V.

Police Officer Anthony Diponizo
Police Officer Darrel Shultz
Police Officer Bernie Garica
          Defendant's

------------------------------------------

          Requied
          Interrogatories
          Under Federal R. Civ.
          Rule 26(f)(a)(c)

          11-CU-6255F


RECEIVED

SEP U 8 2016

Jonathan W. Feldman
U.S. Magistrate Judge
Western District of New York

**Plaintiff First Interrogatories to Defendant
Police Officer Anthony Diponizo**

    Pursant to Rule 26(f)(a)(c) of the Federal Rules of Civil Procedure,
plaintiff request that defendant officer Anthony Diponizo, answer
the following interrogatories.

    (1) Please identify all positions and titles, with correspon-
ding dates of employment, that you held as a law enforcement
Rochester Police Officer. Describe your job responsabilities for
each position and title.

    (2) Please describe in as much details as posible the
training you have recived while working as a law enforcement
Rochester Police Officer on the use of force, including not
limited to the "chemical spray," "stun-guns" and other electro-
chock devices.

    (3) Please describe in as much details as posible every
policy, procedures and practice that governs the use of "chemical
spray" "stun-guns" and other electrochock devices as a law
enforcement Rochester Police Officer.

    (4) Please identify all officials responsible for formulating
implementing and monitoring complaince with the policies proce-
dures and practices, describe in your response to interrogatory #3.

(5) Please describe in as much details as posible the complete circumstance surrounding your use of force against the plaintiff Mr. Ronald Samuels on May 02, 2008.

(6) Please identify each document, as the term is defined in the federal rule of civil procedure 26(f)(a)(c) and 26(f)(d)(d) that evidence mentions, or refer to any of the facts stated in your respose to interrogatory #5.

(7) Please describe in as much detail as posible the complete circumstance surrounding all other instance in which you have used a "chemical spray," "stun-guns" or other electro-shock devices, or threatened to do so, while working as a law enforcement Rochester Police Officer. Include in your response the circumstance surroundings any review or disciplinary action that occured after each actual or threatened application of force.

(8) Please identify each person known to you and not otherwise identified in your answer to this interrogatories who has provided any information, or assistance of whatever nature or description related to any of your answer to these interrogatories.

(9) Please describe in as much details as posible; Mr. Diponizo. When you first saw officer Shultz, were you able to see that officer Shultz had pulled his weapon? And who was officer Shultz pointing his weapon at?.

(10) Mr. Diponizo would it be fair to said plaintiff Mr. Samuels wasn't doing anything threatehing ttowards officer Shultz? Did you take out your weapon as well.? and was Officer Garice with you?.

(11) Please describe in as much details as posible, was officer Garica invoulved with tracking the plaintiff Mr. Samuels? prior to you tackling Mr. Samuels, Did the plaintiff Mr. Samuels attemp to attack Police officer Shultz.?

(12) So you and officer Garica were on top of Mr. Samuels?. And officer Shultz get on Mr. Samuels.?
Please describe in as much details as posible Mr. Samuels was laying on the ground been subdue by you, officer Garica and officer Shultz correct? you administring what you refer to as, to these four knee strikes to plaintiff Mr. Samuels thigh and

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

RONALD SAMUELS

Plaintiff,

**Bernie Garcia Responses
to Interrogatories**

**11-CV-6255 F**

ν.

## Police Officer DARREL SCHULTZ, Police Officer ANTHONY DIPONZIO and Police Officer BERNIE COARICA

Defendants.

The City of Rochester, by its attorneys, T. Andrew Brown, Corporation Counsel, Spencer

L. Ash, Esq., *of Counsel*, hereby responds to Plaintiff's First Set of Interrogatories as follows:

### Response to Interrogatory # 1:

At all times Defendant is/was a patrol officer with Rochester Police Department.

### Response to Interrogatory # 2:

Defendant received six (6) months of police academy training and yearly in-service training to refresh skills and reinforce training.

### Response to Interrogatory # 3:

Please see the attached General Order.

### Response to Interrogatory # 4:

This interrogatory is confusing and unclear.

### Response to Interrogatory # 5:

The extent of the interaction between myself and Mr. Samuels has already been disclosed in the reports and records provided to Mr. Samuels on August 12, 2012.

1

**Response to Interrogatory # 6:**

This interrogatory is confusing and unclear.

**Response to Interrogatory # 7:**

Defendant Objects to this interrogatory as it is irrelevant and not likely to lead to admissible evidence.

**Response to Interrogatory # 8:**

I am represented by the City of Rochester's Law Department.

**Response to Interrogatory # 9:**

The extent of my participation in the arrest of Mr. Samuels is captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

**Response to Interrogatory # 10:**

The extent of my participation in the arrest of Mr. Samuels is captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

**Response to Interrogatory # 11:**

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

**Response to Interrogatory # 12:**

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

**Response to Interrogatory # 13:**

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

**Response to Interrogatory # 14:**

I was assisting with the arrest.

**Response to Interrogatory # 15:**

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

**Response to Interrogatory # 16:**

Defendant objects to this interrogatory as inappropriate, confusing and misleading.

**Response to Interrogatory # 17:**

This interrogatory is confusing and inappropriate. Defendant objects.

DATED: August 21, 2015                    BRIAN F. CURRAN Corporation Counsel

                                   By:    /s/Spencer L. Ash
                                          Spencer L. Ash, Esq., of Counsel
                                          *Attorneys for City Defendants*
                                          30 Church Street, Room 400A
                                          Rochester, NY 14614
                                          (585) 428-6699
                                          Campolj@cityofrochester.gov

Ronald Samuels
233 Washington Avenue
Hackensack, NJ 07601

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RONALD SAMUELS

Plaintiff,

Darrel Schultz Responses
to Interrogatories

11-CV-6255 F

*v.*

Police Officer DARREL SCHULTZ, Police Officer
ANTHONY DIPONZIO and Police Officer BERNIE
COARICA

Defendants.

The City of Rochester, by its attorneys, T. Andrew Brown, Corporation Counsel, Spencer

L. Ash, Esq., *of Counsel*, hereby responds to Plaintiff's First Set of Interrogatories as follows:

### Response to Interrogatory # 1:

At all times Defendant is/was a patrol officers with Rochester Police Department.

### Response to Interrogatory # 2:

Defendant received six (6) months of police academy training and yearly in-service
training to refresh skills and reinforce training.

### Response to Interrogatory # 3:

Please see the attached General Order.

### Response to Interrogatory # 4:

This interrogatory is confusing and unclear.

### Response to Interrogatory # 5:

The extent of the interaction between myself and Mr. Samuels has already been disclosed
in the reports and records provided to Mr. Samuels on August 12, 2012.

1

### Response to Interrogatory # 6:

This interrogatory is confusing and unclear.

### Response to Interrogatory # 7:

Defendant Objects to this interrogatory as it is irrelevant and not likely to lead to admissible evidence.

### Response to Interrogatory # 8:

I am represented by the City of Rochester's Law Department.

### Response to Interrogatory # 9:

The extent of my participation in the arrest of Mr. Samuels is captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

### Response to Interrogatory # 10:

The extent of my participation in the arrest of Mr. Samuels is captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

### Response to Interrogatory # 11:

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

### Response to Interrogatory # 12:

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

### Response to Interrogatory # 13:

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

### Response to Interrogatory # 14:

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RONALD SAMUELS

Plaintiff,

Anthony Diponzio Responses
to Interrogatories

11-CV-6255 F

*v.*

Police Officer DARREL SCHULTZ, Police Officer
ANTHONY DIPONZIO and Police Officer BERNIE
COARICA

Defendants.

The City of Rochester, by its attorneys, T. Andrew Brown, Corporation Counsel, Spencer

L. Ash, Esq., *of Counsel*, hereby responds to Plaintiff's First Set of Interrogatories as follows:

### Response to Interrogatory # 1:

At all times Defendant is/was a patrol officers with Rochester Police Department.

### Response to Interrogatory # 2:

Defendant received six (6) months of police academy training and yearly in-service
training to refresh skills and reinforce training.

### Response to Interrogatory # 3:

Please see the attached General Order.

### Response to Interrogatory # 4:

This interrogatory is confusing and unclear.

### Response to Interrogatory # 5:

The extent of the interaction between myself and Mr. Samuels has already been disclosed
in the reports and records provided to Mr. Samuels on August 12, 2012.

1

## Response to Interrogatory # 6:

This interrogatory is confusing and unclear.

## Response to Interrogatory # 7:

Defendant Objects to this interrogatory as it is irrelevant and not likely to lead to admissible evidence.

## Response to Interrogatory # 8:

I am represented by the City of Rochester's Law Department.

## Response to Interrogatory # 9:

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

## Response to Interrogatory # 10:

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

## Response to Interrogatory # 11:

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

## Response to Interrogatory # 12:

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

## Response to Interrogatory # 13:

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

## Response to Interrogatory # 14:

2

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

## Response to Interrogatory # 15:

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

## Response to Interrogatory # 16:

The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection.

## Response to Interrogatory # 17:

I have been trained on proper arrest procedures. The facts and circumstances of Mr. Samuels' arrest are captured in the reports provided to Plaintiff on August 12, 2012. I have no independent recollection. I was one of several officers who assisted in the arrest of Mr. Samuels.

DATED: August 21, 2015                    BRIAN F. CURRAN Corporation Counsel

By:    /s/Spencer L. Ash
       Spencer L. Ash, Esq., of Counsel
       *Attorneys for City Defendants*
       30 Church Street, Room 400A
       Rochester, NY 14614
       (585) 428-6699
       Campolj@cityofrochester.gov

Ronald Samuels
233 Washington Avenue
Hackensack, NJ 07601

## Other Orders/Judgments
6:11-cv-06255-JWF Samuels v.
Schultz et al

CASREF,CONSENT,JWF,ProSe

### U.S. DISTRICT COURT

#### U.S. District Court, Western District of New York

### Notice of Electronic Filing

The following transaction was entered on 8/8/2016 at 10:28 AM EDT and filed on 8/8/2016

**Case Name:**      Samuels v. Schultz et al
**Case Number:**    6:11-cv-06255-JWF
**Filer:**
**Document Number:** 54

**Docket Text:**
**ORDER, based on plaintiff's request to the Court, plaintiff's response to defendant's
motion for summary judgment is due by 8/26/2016. Replies due by 9/9/2016. Signed by
Hon. Jonathan W. Feldman on 08/05/2016. A copy of this Order has been sent to pro se
plaintiff. (JKT)**

**6:11-cv-06255-JWF Notice has been electronically mailed to:**

Spencer L. Ash     ashs@cityofrochester.gov, Michelle.Bradbury@CityofRochester.Gov,
zollars@cityofrochester.gov

**6:11-cv-06255-JWF Notice has been delivered by other means to:**

Ronald Samuels
233 Washington Avenue
Hackensack, NJ 07601

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1042579058 [Date=8/8/2016] [FileNumber=3311229-0]
[dec99fb12480cc1c1c71aa79f58bf842344c46e67f39973a1178879eea953db21dd5
5165b7af771af4af1ef1685cdd92a1ee1e3324583c0b28658578ca70b9b6]]