UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

RONALD SAMUELS,

        Plaintiff,

v.

DARREL SCHULTZ, ANTHONY
DIPONZIO, and BERNIE GARCIA,
Rochester Police Officers,

        Defendants.

———————————————————

**DECISION & ORDER**
11-CV-6255

## Procedural History

Pro se plaintiff Ronald Samuels brings this 42 U.S.C. § 1983 action against Rochester police officers Darrel Schultz, Anthony DiPonzio, and Bernie Garcia (collectively "defendants" or "the officers"). See Complaint (Docket # 1). Plaintiff claims that the officers used excessive force when arresting him on May 2, 2008, in violation of the Fourth and Eighth Amendments. Id.

Currently pending before the Court is defendants' motion for summary judgment, filed on June 20, 2016. Docket # 53.[1] Plaintiff filed a response with the Court on September 9, 2016. Docket # 56. Defendants did not file a reply, and the motion was thereafter deemed submitted on paper. For the reasons that

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c), the parties have consented to jurisdiction by a magistrate judge. (Docket # 11).

follow, defendants' motion is **denied in part and granted in part**.

## Discussion

<u>Failure to Comply with Local Rules</u>: Before turning to the merits of this motion, the Court must address the failure of defense counsel to comply with the requirements of our Local Rules of Civil Procedure and Second Circuit case law. Rule 56(b) of the Local Rules of Civil Procedure for the Western District of New York provides in relevant part that

> [a]ny party moving for summary judgment against a <u>pro se</u> litigant shall file and serve with the motion papers a "Notice to *Pro Se* Litigant Regarding Rule 56 Motion for Summary Judgment" in the form provided by the Court. Failure to file and serve the form notice shall result in denial of the motion, without prejudice to proper renewal.

L.R. Civ. P. 56(b). Judges of this Court remind counsel of this requirement by repeating it in all of our standard scheduling orders involving <u>pro se</u> litigants. Indeed, our scheduling orders provide counsel with a copy of the required notice that must be attached to any dispositive motion. <u>See</u> Docket # 18 at 4. The Second Circuit has held that "[i]n the absence of such notice or a clear understanding by the <u>pro se</u> litigant of the consequences of failing to comply with Rule 56, vacatur of the summary judgment [against a <u>pro se</u> party] is virtually

2

automatic." Irby v. New York City Transit Auth., 262 F.3d 412, 414 (2d Cir. 2001).

Defense counsel failed to attach the required notice here. There are good reasons for the rule requiring that pro se litigants be apprised of the potential for their case to be dismissed without a trial if they do not submit affidavits or admissible evidence raising triable issues of fact. It is not "obvious to a layman that when his opponent files a motion for summary judgment supported by affidavits he must file his own affidavits contradicting his opponent's if he wants to preserve factual issues for trial." Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) (quoting Lewis v. Faulkner, 689 F.2d 100, 102 (7th Cir. 1982)).

The meager state of the current record unfortunately pays tribute to why strict abidance to the local rule is so important to the efficient administration of justice. Plaintiff's response to the defendants' motion does not comply with Rules 7(a)(3) and 56(b) of the Local Rules of Civil Procedure, a fact that might have been held against plaintiff had the defendants attached the required notice to their moving papers. Moreover, the fact that plaintiff filed a response does not change the analysis. "Where the proper notice has not been given, the mere fact that the pro se litigant has made some response to the

motion for summary judgment is not dispositive where neither his response nor other parts of the record reveal that he understood the nature of the summary judgment process." Vital v. Interfaith Med. Ctr., 168 F.3d 615, 621 (2d Cir. 1999).

Plaintiff's response to the motion for summary judgment is haphazard, disorganized and inadequate. But absent service of the required notice for pro se litigants, the Court lacks confidence that plaintiff understands the nature of a motion for summary judgment or the consequences of an inadequate response. Nevertheless, despite the failure to comply with the local rules, the Court has decided to address the merits of defendants' motion for summary judgment instead of simply denying the motion without prejudice to renew upon compliance with Local Rule 56(b). I choose to address the merits because first, this case has been pending for so long and second, with one exception, the record is sufficient for the Court to determine that summary judgment on plaintiff's excessive force claim is not appropriate.

Fourth Amendment Claim: The analysis required for determination of a summary judgment motion in a case alleging excessive force during an arrest is well established.

> In order to establish that the use of force to effect an arrest was unreasonable and therefore a violation of the Fourth Amendment, plaintiffs must establish that the government interests at stake were outweighed

4

> by "the nature and quality of the intrusion on [plaintiffs'] Fourth Amendment interests." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989). In other words, the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time. <u>Id.</u> at 397. The inquiry therefore "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u> at 396. <u>Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable.</u> See <u>O'Bert v. Vargo</u>, 331 F.3d 29, 37 (2d Cir. 2003).

<u>Amnesty America v. Town of West Hartford</u>, 361 F.3d 113, 123 (2d Cir. 2004) (emphasis supplied).

Plaintiff alleges that excessive force was used by the defendants when they arrested him on May 2, 2008. In his complaint, plaintiff stated that he was coming out of a store and "Officer Schultz drove his police vehicle in front of the store exit as if he was trying to hit me or frighten me." Officer Schultz told plaintiff to drop the pack of cigarettes he was carrying and "get on the ground." Schultz then "pulled his gun" and plaintiff ran until the officers caught up with him. Plaintiff described what happened next as follows:

> I was tackled to the ground by Officer DiPonzio and handcuffed behind my back. Officer DiPonzio was laying on me with his knee in my back while I was handcuffed.

> Two officers ran over to us. Officer Schultz grabbed the back of my neck and started choking [me]. He bashed my head on the grass a couple times. Then Officer Schultz slapped me in the back of my head hard. I heard him say to me "you M.F., you want to run." The other officer that ran over to me with Officer Schultz was Officer Garcia. He started knee[ing] me on my hip and my lower back. I tried to turn around on my back. I couldn't because Officer Schultz was choking [me], yelling at me [to] stop moving. I told him I can't breathe, I can't breathe. I felt Officer spreading my leg. Then Officer DiPonzio started kneeing me on my thigh a few times. All I can hear is "You like to run. Lay down. Lay down." My thigh was in extreme pain. I was sprayed. I don't know who sprayed me with mace.

See Complaint (Docket #1). Once subdued, plaintiff alleges that he was "picked up off the ground" but could not stand because of the pain in his legs and in his back. The officers thought he "was being funny" but he explained that he could not see or breathe. According to plaintiff, he was forced to put his face on the hood of a police vehicle. Id. The car hood was so hot "it was burning my face and my chest." According to plaintiff, he was then "slammed to the ground and felt a slap to the back of my head." Id. Plaintiff claims he refused to put his face back on the hood of the car and began to vomit from the mace. Plaintiff alleges that the mace was not removed from his face until later when he was taken to a hospital. Id.

Based on police reports, defense counsel summarized the events leading to the arrest of plaintiff quite differently:

> In the present case, Police responded to a call regarding a woman being stabbed. When they arrived on scene, they encountered Plaintiff exiting the crime scene. Upon seeing Officers, Plaintiff fled the crime scene and ran around and towards Officers while ostensibly still in possession of a knife. Plaintiff refused several orders to drop to the ground, and once on the ground, actively resisted Officers' attempts to place his hands behind his back. In order to get Plaintiff's compliance, Officers employed a ground stabilization technique, where an officer pins a back shoulder of an arrestee with their knee, a mandibular angle, whereby Officers apply pressure on a nerve behind the jaw bone to effect rapid compliance, and 3 to four knee strikes to plaintiff's outer thigh. Even after Plaintiff was in custody, he still kicked a patrol car and resisted being placed inside a police vehicle.

Defendants' Memorandum of law (Docket 53-3) at 3.

Juxtaposed against each other, these differing versions of the same event confirm the Second Circuit's admonition that granting summary judgment against a plaintiff on an excessive force claim is rarely appropriate. Amnesty America v. Town of West Hartford, 361 F.3d at 123 (finding that an allegation that any resistance to arrest was "purely passive" was sufficient to create a material issue of fact). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). Moreover, the Court has a duty to "extend extra consideration" to pro se plaintiffs. "[P]ro se parties are to be given special latitude on summary judgment motions." Bennett v. Goord, No.

7

03-CV-6577, 2006 WL 2794421, at *3 (W.D.N.Y. Aug. 1, 2006), aff'd, 2008 WL 5083122 (2d Cir. 2008) (quoting Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998)). Defense counsel may very well be correct that the degree of force used to arrest plaintiff was objectively reasonable under the circumstances. However, the "weighing of such competing evidence, no matter how weak plaintiff's claim may appear, presents a question of credibility that must be left to the trier of fact." Miles v. Levac, No. 11-CV-671S, 2014 WL 1338808, at *3 (W.D.N.Y. 2014) (quoting Cicio v. Lamora, No. 9:08-CV-431, 2010 WL 1063875, at *8 (N.D.N.Y. Feb. 24, 2010), adopted, 2010 WL 1063864 (N.D.N.Y. 2010)).

Qualified Immunity and Excessive Force: Defendants' motion to dismiss plaintiff's excessive force claims because they are entitled to qualified immunity must be denied for substantially the same reasons. "Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Second Circuit has stated that in cases alleging excessive force, "[w]here the circumstances are

in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002) (internal quotation marks omitted); see also Houghton v. Culver, 452 F. Supp. 2d 212, 221 (W.D.N.Y. 2006) (stating in an excessive force case, "[i]f the facts about what happened are in dispute, summary judgment [on qualified immunity grounds] is inappropriate"); Benson v. Yaeger, No. 05-CV-784S, 2009 WL 1584324, at *7 (W.D.N.Y. June 3, 2009) ("the only issue [to determine in assessing qualified immunity] is whether the Officers' conduct was objectively reasonable — the very question upon which this Court has found there are genuine issues of material fact"). Defendants' motion is therefore **denied.**

Eighth Amendment Claim: While summary judgment is not appropriate on plaintiff's Fourth Amendment claim, his Eighth Amendment claim must be dismissed as a matter of law. "[E]xcessive force claims must be examined under the standard applicable to the specific constitutional right allegedly violated, which in most instances will be the Fourth or Eighth Amendments, the main sources of individual protection under the Constitution against physically abusive official conduct." Rodriguez v. Phillips, 66 F.3d 470, 477 (2d. Cir. 1995). Eighth

Amendment claims of excessive force are normally limited to post-conviction situations, such as an inmate alleging that excessive force was used by corrections officers while the inmate was incarcerated serving a prison sentence. See Whitley v. Albers, 475 U.S. 312, 318 (1986) ("The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes,' and consequently the Clause applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'") (quoting Ingraham v. Wright, 430 U.S. 651, 664, 671 n. 40 (1977) (additional citations omitted)). Fourth Amendment claims relate to "the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's reasonableness standard." Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015) (internal quotation and citation omitted). Since plaintiff's claim of excessive force arose in the context of an arrest, it is governed by the Fourth Amendment and not the Eighth Amendment. See Thigpen v. County of Erie, No. 11-CV-466A, 2014 WL 1270024, at *8 (W.D.N.Y. March 26, 2014) ("Use of force during an arrest is governed by the Fourth Amendment."). Accordingly, defendants' motion to dismiss plaintiff's claims that he was subject to excessive use of force in violation of the Eighth Amendment is **granted**.

10

## Conclusion

For the reasons stated above, the defendants' motion for summary judgment as to plaintiff's Fourth Amendment claim of excessive force is **denied**. Defendants' motion for summary judgment as to plaintiff's Eight Amendment claim is **granted**. Defendants' motion to dismiss plaintiff's excessive force claim on the ground of qualified immunity is **denied without prejudice**.

SO ORDERED.

```
_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE
```

Dated: March 30, 2017
       Rochester, New York